So we'll go first is Claude Brown v. King County. I think that's Mr. Parker for appellate. Yes, Your Honor. May it please the court. My name is Daryl Parker. I do represent the plaintiff or the employee in this case. The case comes to this court following an order on summary judgment based on several claims that were brought both pursuant to Washington law and pursuant to 1981. The McDonnell-Douglas paradigm that the court often refers to comes from a case that was decided in 1973 before jury trials were allowed in Title VII cases. And as a result, because there were court trials, what the court did was it said that plaintiff has the burden of proving his prima facie case, but the defendant only has the burden of coming forward with evidence, but has no burden of production, has no burden of proof whatsoever. And then the plaintiff has to prove that by preponderance of the evidence that there's pretext or the explanation given is pretext. That was fine when we were talking about court trials, but I think what courts have done is they've continued to state that. In fact, the judge in this case stated that defendant only had a burden of proof. It's probably not that significant in this particular case, but I think this is an opportunity for the court to clarify that in the summary judgment stage, all plaintiff has to do is raise a mere issue of fact. And with respect to the promotion claims that plaintiff has, two of the promotion claims that he has involve positions that he applied for many, many times. There's a history in the brief, which, of course, we can't go back that far and recover for incidents that happened in 2010 or 2011, but it just shows the history of how he would apply for positions. He complained that no blacks are getting these positions. He would apply again for the positions, and he still would not get the positions for various reasons and for what we know. He was listed as fourth in the line of progression to receive the promotion. When one of the people dropped out, he should have been moved up to number three and was not. The second time when he applies, what they do is they say, well, there's nobody in the application process whatsoever who's qualified, and so we're going to have to go outside of the agency to find somebody, which to me was just an excuse not to give him the position. When they went outside the agency, they said, well, look, we're hiring minorities, so it can't be discrimination. But the hiring of minorities doesn't insulate an employer from discrimination. An employer can prefer any number of minorities over other minorities. In fact, even with respect to blacks, an employer can prefer a female black over a male black, or an employer can discriminate against a male black versus a female black. An employer can prefer a person from Africa and discriminate against a person who's an African-American or vice versa. So it doesn't fit into a neat box like that. And the last promotion position that he has, he applied for the position using the same application process that he had used countless times before. This time, the excuse was that we were not aware that you worked for King County before and that at least this particular person who received the application also was not aware that you worked for King County before. It's possible that that's true, but it's also possible that it's fiction. It's also possible that it's a pretext because she specifically stated that she did not know that Mr. Brown had filed discrimination claims before when, in fact, she was instrumental in responding to those discrimination claims. And there's evidence in the fact as to whether or not her explanation for why she denied him the position was pretext. Counsel, Mr. Parker, let me float a question to you of something on my mind so that you can decide how, how or whether and when to address it. But in these discrimination cases, there are often issues about whether we look for forecausation or, or if it's enough, if a factor or if something like race is one factor that's considered as opposed to a but for cause. Now, my understanding is the Supreme Court of the U.S. has granted cert in a case called National Association of American-Owned Media. And that case is going to be argued later this month. So my question is, should our panel defer ruling on this case until we see what the Supreme Court says? I don't think so, Your Honor. And because we have state claims under Washington law, and Washington law has made it clear that the but for analysis is not the proper analysis. I realize that under the Washington law against discrimination, it's not but for causation. But would it be sensible to remand the case on the WLAD claim, but to wait for the Supreme Court and deal with them together? Well, being that I've argued repeatedly that we should not split claims, I can't obviously argue against what you just stated. But let me make a comment about the, the case that you refer to. That was a 1981 case, just as this is a 1981 case. And the language of Title VII itself is where the but for analysis comes from. There's no similar language like that in 1981. And there's no similar language like that in the WLAD. Well, you may be right, but the Supreme Court is going to take up that very same issue in the 1981 race discrimination case, whether but for causation is the test or whether it's just a substantial factor. So wouldn't it be prudent to hold the entire case? Yeah, I can't argue against that because I've argued that before. So I would agree that it would be prudent to not split the case and wait for that decision, particularly for their retaliation claims. Okay, thank you. And I do want to reserve five minutes of my time. No, but when I'm saying thank you, I didn't mean you had to terminate your argument. You can cover whatever issues you want to cover and we'll then give you a rebuttal afterwards. With respect to the claim that plaintiff was entitled to remain in the technical trainer position or the acting technical trainer position, defendant's explanation for why he was removed is clearly pretext, or at least there's a material issues of fact where a jury should be able to decide whether or not this is pretext because the position had never been split before. They put an announcement in the bulletin that Mr. Brown had received the position. In order to get the position, they have to give him a computer access, a computer code. They have to change his email address. You would not do all of that for a position that you were going to split and a person was going to be in only eight days. In fact, the other person who the position was split with was rejected. He was specifically sent an email saying that he didn't get the information that this is real, is false. And even if it's not false, there's still a material issues of fact as to even if that was a legitimate reason for splitting the position, whether or not they were still retaliating against him. The Office of Civil Rights found that it was retaliation and then he submitted a declaration in support of the motion for summary judgment, basically saying that he was not looking at the federal law. He was not looking at state law when he made his decision. But that can't be his. His job is to enforce the laws as they're laid out by the courts and by Washington. So it doesn't make any sense that there's no material issue of fact on the position. Yet an independent body found that there was reasonable cause to believe there was a violation of the issue initially, and that is on the retaliation claim. Am I right that that, as well as the discrimination claim, could involve an issue of but for versus, you know, one element causation? Should that retaliation claim definitely be held for the African American owned media case? I would agree as well, except I didn't know whether or not we were going to get a second opportunity to argue the facts of the case. And so that was the reason that I was bringing this up. Well, yeah, no, I think the panel wrestled a little with whether to vacate argument and wait until after that case, but decided it would be better to have the case argued first and then deal with it later. But I'm still interested in whether there are any sound reasons to try to carve out the WLAD claim where it looks like there was an error and split them up. And you said earlier you didn't think we should do that. I said I don't think it's a good use of judicial resources to split claims like that, because you wind up with two trials and we could wind up with a waste of judicial effort. Okay, great. Thank you. Right. So I would like to reserve the rest of my time, although I'm not really sure what. It's reserved, let me say, with our schedule today. And I should have said this at the outset. No advocate needs to use up every minute allotted to them. If anyone wants to sit down, the panel will be happy. But we do want to let everyone argue their client's case. Good morning, Your Honor. I'm John Zeldin. I represent King County in this case. So to cut to the chase for a minute, I have the same question for you that I asked Mr. Parker. That is, shouldn't we hold here for the Well, Your Honor, I think that in this particular case, and you're talking about the African American Association case that has been granted, apparently, at the Supreme Court. I think it's set for argument November 14. I think that however the court comes down, the retaliation dismissal should be affirmed in this case. The judge below specifically indicated in his order at page 19 that Mr. Brown's complaint, that being the one filed in March of 2013, several months before this AT&T temporary position, he has not shown that it was a reason, any reason. And so it doesn't really matter if it's a but-for standard or some other type of a standard. He basically found that it was not a reason at all. I'm more than happy to talk about the AT&T position, but I think that the decision can be affirmed even if the Ninth Circuit's decision is upheld. Okay, thank you. With regard to the AT&T position, this is a question of whether there's a material issue of fact to go to the jury, right? Whether a reasonable jury could find that the defendant's reason was pretextual. How does it make sense to put somebody in a position for eight days, during which time he, per his declaration, didn't gain any of the skills that would put him in a position to get a better, or to be promoted, essentially? It just doesn't make sense to me. Yes, and I think that when you look at the totality of the facts that surround this whole AT&T appointment in May, June, July of 2013, the picture that sort of emerges from this whole thing is that it was pretty much a botched rollout of a very poorly defined position. That's really what this looks like. It doesn't look like retaliation or discrimination for a couple of reasons. One is, they certainly knew Mr. Brown was African American when they placed him in the position. So it doesn't make sense that they would come back thereafter and say, well, now we're going to discriminate against you by removing you. Now, for retaliation purposes, you have to kind of say, does this really make sense that this would be a retaliatory move? First of all... But isn't that why this is a jury question? Pardon, Your Honor? Isn't that why this should be a jury question? Well, I think there's a couple reasons why it shouldn't be. I think, factually, it doesn't add up. If you have the same actor inference, the same actor put him in, the same actor took him out. Now, did she know about any protected activity that preceded that? We don't really know. We do know that she had some knowledge of it, and she's testified about that in her deposition. But either way, it doesn't matter. If she knew about a complaint that he made before the July 2013 AT&T position, then she is the same actor who put him in and then took him and then decided to split the position. Was she the sole decision-maker in terms of selecting him for this particular position? I think she was a decisive decision-maker. She collaborated and discussed it with another person, Tom Jones, I believe. But I think she was the moving force behind the decision. And she certainly was the one who decided to split the position. It just defies common sense that she would say, we're going to retaliate against you, but first we're going to put you in the job, and then I'm going to go on vacation and come back, and then we're going to retaliate against you. But don't we know that there's a difference between a person getting an acting position and getting a more permanent position? Absolutely, and I think that's the second prong of this. Factually, I don't think it makes a whole lot of sense, and I could discuss that more. But from a legal standpoint, I don't think what we have here is adversity for purposes of either retaliation. Now, I know that the standards are somewhat different, but for discrimination purposes, the protected act has to, the adverse action has to follow, has to be, you know, a substantial, tangible thing, like a loss in benefits or a loss in job or reduction in wage. For discrimination purposes, certainly this is a temporary position. They both served in the position for approximately equal times. It was only one month long. Both of them testified that they did basically the same routine, clerical, administrative, hole-punching, binder-creating job that really didn't add any benefit to them at all. And that's from Mr. Gumke's testimony as well. So we have a very brief position. We do have law that says adversity doesn't necessarily follow from the appointment or non-appointment to a temporary detail. Employers have to have the flexibility to move people around and try people out in different slots. There is no tangible objective evidence that Mr. Brown suffered any adverse effects from this. He didn't lose any money. It's not that he lost a specific benefit or an opportunity to move on to a different position. He has a legitimacy. I think that sounds, again, like good arguments for the jury. This was a temporary position that was designed to be a development opportunity for advancement. And so per his testimony and the other evidence, couldn't a reasonable jury draw the opposite inference from what you're arguing, that that is, despite the fact that this was a developmental opportunity, he never got that opportunity? Well, he did get the opportunity, though. He had the same, the exact same opportunity as Mr. Gumke. He was placed in the position, but then was assigned clerical duties, never got a split right out from under him. These are all inferences that could also reasonably be drawn from the evidence, couldn't it? Well, I suppose you could. If you take the position itself and say that this is a, you know, this would be an adverse action in itself, a failure to appoint or to move somebody in and out of a detail, assuming that that is adverse as a matter of law, you know, you could go there. However, when we look at the record here, it's very clear that Mr. Gumke certainly obtained no material benefit from this, and neither did Mr. Brown. They both served equally in it. We're talking about a two-week period. Now, in terms of whether he gained a benefit or not, we'd have to have a jury try to decide whether an additional two weeks in a temporary detail, filling, you know, was going to be a significant reason to find this was an adverse action. And the fact that both of them, in fact, got to serve in the position, they were rotated in and out, we're talking about a two-week period that he sidestepped from, isn't sufficiently adverse, either for discrimination or retaliation purposes, to really go to a jury, I think. It's not enough. He made more in his other job. He made less in this acting position. And the temporary details of the law is the fact that they are not adverse. In fact, there is a case out of Florida that we cite, and that is, I think, cited in the order, that says the exact same thing. These cases, these situations, the temporary details, the appointment or the non-appointment to them are not considered sufficiently adverse for discrimination or retaliation. Thank you. Counsel, could you please take a few minutes at some point to discuss how the court, how the district court handled the WLAD claim? The WLAD claim as to? Discrimination. Okay. Well, there were four events in this case, obviously. Under our arguments, too, we submitted a statement of supplemental authorities about three weeks ago indicating that under Section 1981, a party must plead a pattern or practice to have liability against the municipality. That was never done in this case. This court can affirm on any basis that's apparent in the record. And that was never done. So Section 1981 technically is a legal matter, was properly dismissed, and this court could affirm on other grounds. Now, for the WLAD, the WLAD applies to three of these claims. And that would be the July 2013 ATT position. That would be the October 2013 train order violation. And that would be the May 2014 promotional opportunity. So for discrimination purposes, again, you just have the standard test. And I don't think that he is satisfied, made a case of discrimination under either of them for this position. For one, you have the same actor inference under the WLAD. So that's the first part. So under the WLAD, I don't think that he has a discrimination claim as to any of these positions, certainly not the first one because that's time barred under the WLAD. Okay, thank you. What does the record show about why he wasn't moved into that position in 2012 despite being ranked fourth? One of the top three very quickly quit. Well, that's a misstatement of the record by counsel. That was actually a 2012 promotion. There's no real evidence in the record concerning the April 2012 RSIT position that he was just speaking of. That occurred in 2012. And so that's time barred. There's been no briefing or evidence presented about that at all. Those are just allegations concerning that. Now, as far as the one that he is complaining about that is timely under Section 1981, that's the October 2012 RSIT promotion. And during that one, he was 18th in the testing, and they selected 14 to move forward to the interview process. And so for that one, that was a legitimate non-discriminatory reason and non-retaliatory reason for not advancing his application. They had an objective test, objective standards, and he did not score high enough. Also, under Section 1981, for that position, we do have the replacement element, which applies in the Ninth Circuit under Dominguez-Curry, and that requires that the person appointed to the position that he didn't get was of a non-protected category outside his class. That element is not met either. An African American was appointed to the position, as well as a Hispanic American was appointed to that October 2012 position. And so even if the WLAD doesn't have that or is waffling with that over here, certainly Section 1981 and Dominguez-Curry still does have that. And in May 2014, when he applied for the same position again, was that the same position that he applied to in 2012? Well, I don't know that I could say they were the same. It was called the same thing. The difference that happened there is you had a new person who was in HR. Her name was Yvette Martinez-Morales. She was not part of the 2012 application process. She developed a new aspect of this questionnaire. It was called a supplemental questionnaire, and it required you to list in sufficient detail all of the positions that you'd had in a certain number of years and describe what you were doing in each and every one of them. That requirement had not been present in the 2012 process. And if you look at Mr. Brown's application for the 2014 process, it shows that he simply cut and pasted something from a 2011 application and put it in there. So he didn't read the instructions and he didn't read what it was. That was a new requirement, and she was very clear about it, and she disqualified a number of individuals for the same reason, and she disqualified Caucasian employees for the same reason, and that's also in the briefing in her declaration. I suppose if the panel has no further questions, I can give up my time. I have no further questions. Thank you, Counsel. Thank you, Your Honor. No further questions. Thank you, Counsel. Thank you. We will hear from our panel and Dr. Lopato. Just really briefly, I don't believe the same actor inference applies at all in this case because there are material issues of fact as to whether or not Ms. Nightingale had anything to do with him being put in the acting position. Our evidence, the inference that a jury could easily draw, is that she was not aware that he was put into this position, that she was on vacation, and when she came back from vacation and realized that he was in this position, she started giving him menial tasks and eventually took him out of the position two days later. So I don't think the same actor inference applies, and Washington law has been moving more and more liberally toward allowing discrimination cases to be decided by juries. In fact, the argument that we have to show that a person was replaced by someone outside their protected class has been eliminated by Mickelson in Washington. The fact that we have to show, or previously we had to show that for retaliation cases, that the person actually knew about the protected activity. Now, based on Cornwell versus Microsoft, it's whether they knew or should have known about the activity. So Washington courts have repeatedly been moving more and more liberally toward allowing these cases to go to the jury. In addition, the whole history of Mr. Brown's relationship with King County has to be taken into consideration, even if parts of that are time barred by the statute of limitations, because it shows how often he attempted to apply the fact that everybody was well aware that he wanted this job, everybody was well aware of his qualifications, everybody was well aware that when rail first started, he was the one who trained the supervisors that have now moved past him. All of that is relevant for the court to take into consideration in determining whether or not a jury could find discrimination. In addition to that, the anecdotal evidence that we showed, again, it's not direct, but it shows that there's a whole history of discrimination at King County, that a jury could take this into consideration and find that this was discrimination. And lastly, council has cited non-Ninth Circuit cases, one a district court case out of D.C., and one was an Eleventh Circuit case. But those cases are not talking about moving from one job to another job. The acting technical training position is a buildup to the technical training position job itself, and that job pays $8 to $10 an hour more than the rail operator job. It's a cherished job, and the way these jobs are, people are selected for these jobs, is that they look at what experience do you have. And so you can say that for a month or two months I acted as the technical trainer. It gives you a leg up. And lastly, it is definitely not clear, it is not an established fact, that this position was only going to be a two-week position or this position was only going to be a 30-day position. It's clear from the record that the position was going to be a long-term position, and for some reason Nightingale decided to cut the position short. I think if Mr. Brown had not complained that being taken out of the position was an act of discrimination, Mr. Gumpke would have stayed in the position for an appreciable amount of time. They did not advertise this position. They did not go through a selection process for the position. They did not do all those things to create a position that was only going to last a couple of weeks. So I know the court is going to defer for the Supreme Court ruling, but I still ask that this be reversed. Thank you, counsel. I want to thank both counsel for their excellent advocacy today on this case. Brown v. King County shall be submitted now. And as the counsel may have inferred, the court will soon file an order that will withdraw and defer submission until that case is decided.
judges: Gould, Nguyen, Presnell